Johnson, J.
It is conceded on all hands, that the ca.sa. on which Brown was last arrested, was perly and irregularly issued. He had been regularly and properly discharged from his arrest on the first ca. sa. by a commission of special bail, under the authority of the Act usually called “The Prison Bounds Act,” Pub. Laws, 458, and he was not liable to be arrestedfor the same cause, unless for the causes and under the circumstances provided for by thgt, or the Insolvent debtor’s Act, Pub. Laws, 247. These I shall have occasion hereafter to notice more particularly for the present, it is enough that they do not authoriize the plaintiff to proceed again to arrest the ant, on his own mere motion. There was then no authority for issuing the second ca.sa.
Conceding to this, it is maintained by the opposed to the motion, that in debt against the slier-iff for an escape, on final process,if the court had *434 over the subject matter, he cannot, by way of defence, avail himself of any irregulary or informality in the process, and is bound for the whole amount °* the debt; and tliis position is fully borne out by authorities. The Act of 1789, Pub. Laws, 271, subjects sheriffs here, to the same liabilities in cases of escape, to which sheriffs are, according to the laws mid, statutes of Great Britain, and the decisions of the English Courts leave no doubt about these questions, Bacon Abr. Escape in civil cases, A. Shirly & Wright, 1 Salk. 273, Bonafous v. Walker, 2 D. & E. 131, 2, 3; and the same language is held in our courts, 2 Bay, 396, 7. Treasurer against Ford, 1 Nott & M’Cord, 236. In reference to the case on hand, it is important also to remark, that in cases of escape on final process, the sheriff’s liability is precisely that of the original debtor. This is strongly put in Bonafous &• Walker. Buller, J. says, that the party who suffers by the escape, shall have the same remedy against the jailer, which he had against the original debtor; and per Grose, J. “when a prisoner escapes out of execution, the jailer is put in the same situation in which the original debtor stood, and is liable to pay what the original debtor would have been obliged to pay.” If then, one had been arrested on a m. sa. where there was no judgment to authorize it, or where it had been satisfied, and the sheriff had permitted his escape, the plaintiff could not have maintained an action against the sheriff, because the plaintiff had suffered no loss. The party arrested owed him nothing, and making that the measure of his recovery, he could not recover any thing. As a preliminary to the liability of the sheriff, we must therefore, in every case, ascertain the nature and extent of the liability of the party escaping. What is it here ?
The plaintiff had procured Brown to be arrested on the first ca. sa. and from the arrest, he had been properly and regularly discharged; and by the common law, that was a satisfaction of his judgment, and in Osborne v. Bowman, 2 Bay, 210, it is said to be the highest satisfaction known to the law. If then. *435 Brown was further liable on that judgment, that liability must arise out of some statute. • The only Acts having any relation to this subject that I am aware of, are the Insolvent Debtors’ and Prison Bounds Acts, before referred to. The 4th and 5th sections of this last, the Prison Bounds Act, directs that where a debtor in execution, shall, within a limited time, “render a schedule of his whole estate, or so much thereof as will satisfy the plaintiff’s demand, and assign the same for the benefit of such creditor, the judge, justice or commissioner of special bail, shall discharge the prisoner,” but it is provided, that “if the property contained in the schedule, should prove deficient, any other property that the prisoner may have, or hereafter acquire, shall be liable for the demand for which he or she is so confined.” Now it is apparent, that the liability 'created by this clause of the Act, is a special, and not a general liability — a liability in reference to property subsequently acquired, or not contained in his schedule, and not a general personal liability. If then, the liability of the sheriff for the escape, is precisely that of the original debtor, and no other or greater, he could only be liable to the extent of the property subsequently acquired by Brown, if any. But I am the more inclined to the opinion, that Brown’s discharge was quasi a satisfaction of the judgment, and that its reeuscitation depended entirely on his subsequent acquisition of property. I do not know that our courts have established any rule upon the subject, and I am not prepared to say, that the plaintiff would not upon the subsequent acquisition of property, be entitled to take out his fieri Jadas as of course; but judging from analogy, I incline to think it would be more regular when the judgment was still operative, to file a suggestion stating the fact, and put the defendant to plead; or in sci.fa. or debt upon the judgment, the plaintiff might either suggest .it, or reply it, if the defendant pleaded his discharge. However that maybe, it is very clear, that the plaintiff did not derive his authority to sue out a second ca. sa, from this clause of the Act. Whatever may have *436 Brown’s liability at the time of the last arrest, the modo et forma, were changed by his discharge. Suppose to an action of debt on the judgment, Brown had pleaded his discharge? Is there any question that the bar would have been good, unless the plaintiff could avoid it by a replication of property subsequently acquired, or the possession of property not contained in the schedule? How then can it be said that the defendant, who suffered him to escape, is liable for his debt, when there is no record showing the extent or fact of his liability.
The 10th section of the same Act, imposes another liability on a debtor discharged. If he “shall deliver in a false schedule of his effects, he shall suffer the pains and .penalties of wilful perjury; shall be liable to be again arrested on the action or execution, on which he was discharged, and shall be forever disabled from taking the benefit” of that Act, or the Act for the relief of insolvent debtors. But until the ordinary course of things is reversed, and the courts do execution first, and then consider of the judgment, it will not be maintained that the plaintiff derived his authority to' issue his second ca. sa. from this provision. The tact of the perjury must be first ascertained in some sort of judicial form, before he is liable to be arrested.
The only remaining cause provided for in these Acts, for which a debtor discharged from execution may be subsequently arrested, is found in the latter part of the first section of the Insolvent Debtors’ Act, which being altogether consistent with the Prison Bounds Act, maybe taken in pari materia. By that, the debtor is required, within six months after his discharge, to deliver up to his assignees, all the goods and effects contained in his schedule, which he shall have in his power, and it provides, that in case he “ shall neglect or refuse to do so, within the time aforesaid, it shall and may be lawful for the said justices, upon the application upon oath, of the said as-signee or assignees, again to remand the said debtor to prison, unless good cause shall be shown by him of *437 them to the contrary, until he or they comply with the terms of this law.” Brown’s refusing to deliver up the property contained in his schedule, was, according to the report, the only foundation for the second execution. Of that, it is perhaps enough to say, that by the terms of the Act, the jurisdiction is expressly confided to the justices or commissioner of special bail, to whom the application was made, and that a ca. sa. issued from the clerks office as of course for that cause, was not only irregular, but absolutely void, and according to all the cases, justified the defendant in discharging Brown.
On the argument, it struck me that there was something in these Acts, or some adjudication of our courts, which authorized the plaintiff to arrest Brown again for the same cause, after the expiration of a year and day, and that issuing a ca. sa. earlier, was a mere irregularity which would not protect the defendant. But on carefully looking into the Acts, I find there is no such provision; the only saving on the subject, is found in the Insolvent Debtors’ Act, and that is in favour of creditors other than suing creditors, wrho refuse to accept a dividend; a provision peculiar to that act, and which could not, under any circumstances, apply here — nor have I been able to find one dictum in our books of Reports, favoring such an idea. I conclude therefore, that there is nothing in it. Indeed the whole policy of these Acts is opposed to it: an unfortunate debtor would derive little advantage from them, if, after his body had been incarcerated, and the last cent of his wealth extorted from him, a merciless creditor might, at'his will, put him again to the same torture, as often as he might capriciously think proper. I am therefore of opinion, that there was no existing operative judgment of a court of competent jurisdiction, to authorize the suing out of the second ca. sa. against Brown, and that it was not merely irregular, but absolutely void, and that the defendant was excusable for discharging him.

A new trial must therefore he granted, and it is so ordered.

Peareson &. Nott, for the motion.
Clarke & M’Doweli, contra.
Harper, J.
Certainly, at common law, the arrest ar>d discharge of a defendant, was considered a satisfaction of the judgment. If it is not so in this case, it Must depend on the words of the Prison Bounds Act, that “if the property mentioned in the schedule, should prove deficient, any other property which the prisoner may have or hereafter acquire, shall be liable for the demand for which he or she is confined.” I can fix but one of two meanings to these words. The first is, that notwithstanding his discharge, the party remains liable, to every kind of process, whether ca. sa. or fi. fa. for the purpose of enforcing payment out of any property he may have. The other, that his property remains subject to a fi. fa. though his person is exempt from arrest. For several reasons, I incline to think the latter construction the true one.
1. The discharge would seem to be nugatory, if the party is again immediately liable to arrest.
2. Another clause of the Act provides, that in case of rendering a false schedule, the party may be again arrested; which would be superfluous, on the first construction.
S. The statute, Geo. 2. (See 3 Blac. Com. 416,) for the relief of poor insolvent persons, (commonly called the Lord’s Act) from which our Prison Bounds Act seems to have been partly copied, makes a similar provision, that the party’s property shall be subject to the process of fi. fa. though his person be exempted from arrest. For these reasons, I concur.
O’Neall, J. dissented.